UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAREPLUS HEALTH PLANS, INC.,

      Plaintiff,

v.                          CASE NO. 8:05-CV-2010-T-27MAP

FELICITA CRESPO,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

In 2003, the Defendant slipped and fell at a Bank of America branch in Miami. Careplus, her Medicare-substitute provider, paid $19,911.12 in medical bills. When she settled a personal injury lawsuit against Bank of America for $75,000.00, Careplus demanded she pay her medical expenses. Unsuccessful, Careplus filed this action against her for reimbursement claiming the applicable statutory and regulatory scheme allows such a remedy. *See* 42 U.S.C. § 1395mm(e)(4) and 42 C.F.R. § 417.528. The Defendant, however, argues Congress never expressly or impliedly created such a private right of action, and moves to dismiss per Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction (doc. 26). Although the Eleventh Circuit has not decided this precise issue, I conclude based on the Sixth Circuit's well-reasoned decision in *Care Choice HMO v. Engstrom*, 330 F.3d 786 (6th Cir. 2003), that Congress did not give HMOs the remedy Careplus advances; accordingly, I recommend the district judge grant the Defendant's motion and dismiss the complaint for lack of jurisdiction.[1]

    *A. Discussion*

---

[1] The district judge referred this motion to me for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 6.01.

This case is factually and legally on all-fours with the Sixth Circuit's decision *Engstrom*, the only circuit to have decided if the applicable statutory and regulatory schemes create a private cause of action for recouping medical expenses. Like Careplus, the Medicare-substitute provider in *Engstrom* sued its beneficiary for medical expenses caused by a slip and fall. And like Careplus, it claimed 42 U.S.C. § 1395mm(e)(4) and 42 C.F.R. § 417.528(b) expressly authorized it to seek reimbursement from the beneficiary because the beneficiary had received benefits from another source of insurance. Alternatively, the provider argued, as Careplus now urges, Congress impliedly created such a private cause of action. But after considering § 1395mm(e)(4) and its scant legislative history against the judicial scrutiny required for determining private causes of action, the Sixth Circuit concluded "[t]here is no evidence here that Congress intended to create an affirmative right to reimbursement that is enforceable in federal court." *Id.* at 789. Careplus does not persuasively suggest the Eleventh Circuit's treatment of this issue would vary from Sixth Circuit's reasoning.

"The question of the existence of a statutory cause of action is, of course, one of statutory construction." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568 (1979). As with substantive federal law, Congress must create private rights of action. *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001). This means Congress, when it passed the statute, must have intended to create not only a private right but also a private remedy. *Id.* Without such an indicia, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87.

The starting point for all this is the statute itself. *Touche Ross, supra* ("our analysis must be begin with the statute itself"). Section 1395mm(e)(4) provides:

> Notwithstanding any other provision of law, the eligible organization may (in the case of the provision of services to a member enrolled under this section for an illness or injury for which the member is entitled to benefits under a workmen's compensation law or plan of the United States or a State, under an automobile or liability insurance policy or plan, including a self-insured plan, or under no fault insurance) charge or authorize the provider of such services to charge, in accordance with the charges allowed under such law or policy –
>
> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
>
> (B) such member to the extent that the member has been paid under such law, plan, or policy for such services.

Nothing in this language, as the *Engstrom* court pointed out, authorizes a private right of action by an HMO against its beneficiary for reimbursement. Namely, while HMOs are intended beneficiaries of § 1395mm(e)(4), and the language of that section establishes that HMOs may obtain reimbursement where the beneficiary is eligible for coverage under some other insurance policy, the statute does not specifically confer to HMOs a private cause of action much less a private remedy. *Engstrom,* 330 F.3d at 789. Without an express grant of authority, the issue evolves to whether Congress implied such a right. Again, the *Engstrom* court, guided by the Supreme Court's factor-test in *Cort v. Ash,* 422 U.S. 66, 78 (1975), determined Congress did not imply such an action. Nothing Plaintiff argues suggests the Eleventh Circuit would decide differently.

In *Cort v. Ash,* the Supreme Court identified four factors courts should consider in determining if an implied cause of action exists: (1) is the plaintiff "one of the class for whose especial benefit the statute was enacted, namely, does the statute create a federal right in favor of the Plaintiff? (2) is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? (3) is it consistent with the underlying purposes of the legislative scheme imply such a remedy for the Plaintiff? (4) and is the cause of action one traditionally relegated to

state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" *Id.* Since deciding *Cort,* the Supreme Court "has receded from its reliance on three of these four factors. Instead, the focus should exclusively be on the legislative intent to create a private right of action; this is *the* touchstone of the analysis." *Love v. Delta Airlines,* 310 F.3d 1347, 1351-52 (11th Cir. 2002) (emphasis in original).[2] Accordingly, district courts should, "first and foremost," look to the statutory text for "'rights-creating' language." *Love* at 1352 (quoting *Sandoval,* 532 U.S. at 288). Next, the statutory structure including the provision at issue bears review. *Love,* at 1353. Lastly, "if – and *only* if – statutory text and structure have not conclusively resolved whether a private right of action should be implied, [district courts should] turn to the legislative history and context within which a statute was passed." *Id.* (emphasis in original).

None of these factors, when applied here, convincingly imply a private right of action. As already noted, § 1395mm does not contain "rights-creating" language, namely: language "explicitly confer[ing] a right directly on a class of persons that include[s] the plaintiff in [a] case." *Id.* at 1352 (quoting *Cannon v. Univ. of Chicago,* 441 U.S. 677, 690 n. 13 (1979)). Nor does the legislative scheme, as the Sixth Circuit concluded, offer convincing evidence for interpreting a private right of action. *Engstrom,* 330 F.3d at 789-90. Instead, the scheme (§ 1395mm) aims at regulating the behavior of HMOs that substitute for Medicare. And the particular provision at issue, § 1395mm(e) regulates the premiums Medicare-substitute HM)s may charge beneficiaries. The Sixth Circuit persuasively reasons that placing § 1353mm(e)(4) in this context "makes it clear that it is intended

---

[2] *Love* traces this journey, which culminates in *Alexander v. Sandoval, supra. See* 310 F.3d at 1352 n.2.

to explain what Medicare-substitute HMOs are still permitted to do – namely, include a provision in their own policies making them a secondary insurer." Congress did not intend, by the provision, to create an affirmative right to collect from other sources of insurance via an action in federal court. *Id.* at p. 790. Finally, the legislative history does not support Careplus's position. Congress passed § 1395mm(e)(4) as part of the Tax Equity and Fiscal Responsibility Act of 1982. *See* Pub. L. No. 97-248. A "grab-bag of fiscal and regulatory reform," Congress debated only certain Medicare provisions; this section was not one of them. *Id* at 789. Given that courts are to look at legislative history with a "skeptical eye because the bar for showing legislative intent is high," the Sixth Circuit uncovered no "smoking gun" from the legislative history pointing to any private right of action. *Id.*; *See also Love,* 310 F.3d at 1353 (legislative history to be viewed with "skeptical eye" because the "bar for showing legislative intent is high" and Congressional intent to create a private right of action is not to be presumed).

Despite Careplus's shortcomings, it nonetheless urges § 1395mm(e)(4)'s regulatory corollary, 42 C.F.R. 417.528 grants HMOs a private right of action.[3] This argument, however, ignores the rule that a regulation's scope depends upon the reach of its statutory parent. *Sandoval*,

---

[3] Section 417.528(b) provides in pertinent part as follows:

Charge to other insurers or the enrollee. If a Medicare enrollee receives from an HMO or CMP covered services that are also covered under State or Federal worker's compensation, automobile medical, or any no-fault insurance, or any liability insurance policy or plan, including a self-insured plan, the HMO or CMP may charge, or authorize a provider that furnished the service to charge –

(1) The insurance carrier, employer, or other entity that is liable to pay for these services; or

(2) The Medicare enrollee, to the extent that he or she has been paid by the carrier, employer, or other entity.

532 U.S. at 291 ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not"); *see also Touche Ross*, 442 U.S. at 577 n. 18 ("the language of the statute and not the rules must control").  Thus, as the *Engstrom* court found, 42 C.F.R. § 417.528(b) "does not provide any additional support for implying a right of action beyond what is contained in § 1395mm(e)(4) itself." *Engstrom*, 330 F.3d at 788 n. 3.  Notably absent from the regulation is a private right to sue the enrollee or enforce a lien against them in a federal district court; rather, the regulation merely restates the permissive language of the authorizing statute.

Much of the Plaintiff's argument rests on a decision in this district by another district judge who determined an HMO's subrogation rights are governed by federal law. *See Humana Medical Plan, Inc. v. Valdez*, 25 F. Supp. 2d 1347 (M.D. Fla. 1997).  That decision, decided before *Sandoval* and *Love,* offers no reasoning for its conclusion and does not address whether the statutory and regulatory schemes authorize a private right of action (as the *Engstrom* court points out when dismissing the case's persuasiveness).  Consequently, it has no real persuasive value, particularly in view of the circuit's cynical approach for implying private causes of action in legislation that includes little or no text for such a conclusion.[4]

*B. Conclusion*

Plaintiff brought this action before the Court relying on federal question jurisdiction.  Given

---

[4] Intra-court comity has no application here; *Valdez* is not binding and without precedential value.  A district court cannot be bound by a decision of one of its brother or sister judges.  Thus, unlike circuit court panels where one panel will not overrule another panel, district courts are not held to the same standard.  Here, the only courts this Court is obedient to are the Eleventh Circuit and the Supreme Court.  *See Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd.,* 240 F.3d 956, 965 (11th Cir. 2001) (rejecting intra-court comity argument).

that the statutory scheme Plaintiff relies upon for federal question jurisdiction provides no private right of action in federal court, it is hereby

RECOMMENDED:

1. Motion of Defendant to Dismiss (doc. 26) be GRANTED.[5]

IT IS SO REPORTED at Tampa, Florida on October 31, 2006.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report. It shall also bar the party from attacking on appeal the factual findings in the report accepted or adopted by the district court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) (*en banc*).

cc:  Hon. James D. Whittemore
     Counsel of Record

---

[5] Since there is no federal question jurisdiction, this Court is not the proper venue for Plaintiff's unjust enrichment claim.